IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-02596-CMA-KLM

AMAIR, INC., a Nevada corporation,

    Plaintiff,

v.

GAPEX AVIATION SP. Z O.O., a Polish corporation,

    Defendant.

---

**ORDER GRANTING IN PART AND DENYING IN PART
PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

---

This matter is before the Court on Plaintiff Amair, Inc.'s Motion and Memorandum for Entry of Default Judgment Against Gapex Aviation SP. Z o.o. (Doc. # 94.) Defendant has not responded to Plaintiff's Motion. For the reasons that follow, Plaintiff's Motion is granted in part and denied in part.

## I.     BACKGROUND[1] AND PROCEDURAL HISTORY

This case arises out of a contract dispute between the parties. Plaintiff is a corporation organized under the laws of the state of Nevada with its principal offices

---

[1] The following facts are taken from Plaintiff's Amended Complaint (Doc. # 11-1). All the well-pleaded allegations in the complaint pertaining to liability are deemed true because a default amounts to an admission of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted). However, mere conclusory statements are not deemed to be true. *Jones v. Wells Fargo Bank, N.A.*, No. 13-cv-02210-MSK-KLM, 2014 WL 3906297, at *8 (D. Colo. Aug. 7, 2014); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (distinguishing "well-pleaded facts" from "conclusory allegations").

located in Denver, Colorado. Plaintiff is a full-service aircraft engineering, certification, design, and support company, and it supplies equipment and services to aircraft operators, manufacturers, completion centers, avionics manufacturers, and FAA repair stations.

Defendant is a limited liability company organized under the laws of Poland, with its principal offices located in Grudziadz, Poland. Defendant is a provider of products and services including pilot training, taxi and small-displacement taxis, as well as the repair, maintenance and tuning of aircraft and spacecraft.

On June 5, 2013, the parties entered into an agreement ("Mewa Purchase Agreement" or "Agreement") according to which Defendant promised to sell its claims[2] to various assets ("the Mewa Assets" or "Assets") to Plaintiff in exchange for $270,000. The Mewa Assets relate to the design and development of the M20 "Mewa" twin engine piston aircraft. They include, *inter alia*, design documentation, production and tooling documents, as well as airplane parts. Pursuant to the Agreement, the Assets were supposed to be transferred to Plaintiff after Plaintiff had obtained "a new type certificate" for the airplane from the Federal Aviation Administration ("FAA"). (Doc. # 11-1 at 6.)

---

[2] It is unclear from Plaintiff's Amended Complaint who actually owns the Assets. Plaintiff alleges that Bear Aerospace, Inc. purchased the Assets at a bankruptcy proceeding in Poland. Plaintiff further alleges that Bear Aerospace "attempted to sell" the Assets to an entity called Genapol, Sp. Z o.o., but the "sale was never finalized, as no money was ever exchanged." (Doc. # 11-1 at 4.) Thereafter, Genapol assigned the Assets to Defendant "under terms that were also not completed." (*Id.*) Nevertheless, Defendant apparently managed to obtain possession of the Assets. However, Bear Aerospace, Genapol, and Defendant "all asserted claims to/ownership of" the Assets. (*Id.*) On January 22, 2016, Plaintiff entered into an agreement with Bear Aerospace in which Bear Aerospace indicated that it "**may**" have certain rights to the Assets and that it conveyed whatever rights it had, "**if any**" to Plaintiff. (*Id*. at 32) (emphasis added).

Before Plaintiff could obtain the requisite certification from the FAA, however, Plaintiff had to first obtain certification from the European Aviation Safety Agency ("EASA"). Subsequently, the EASA could transfer the certification to the FAA according to a treaty between the United States and the European Union. Therefore, Plaintiff used its efforts and resources to attempt to obtain the certification from the EASA and FAA. Specifically, Plaintiff filed and paid for the application for the EASA certification.

The procedure for obtaining the EASA certification required the relevant authorities to be provided with certain Assets, including the design documents of the M20 Mewa aircraft, which were in Defendant's possession. However, although Defendant initially expressed a willingness to grant Plaintiff access to the necessary documents, Defendant ultimately failed to do so. As a result, Plaintiff was unable to complete the certification process.

Despite Plaintiff's numerous attempts to salvage the parties' arrangement, Defendant failed to cooperate with Plaintiff, and Defendant ultimately informed Plaintiff that it considered the Agreement to be void. As grounds for its decision to treat the Agreement as being void, Defendant cited demonstrably false reasons. For instance, Defendant claimed that Plaintiff failed to perform by not making a payment on time when the payment was not actually due. (*Id*. at 9, 20) (Defendant claimed that Plaintiff failed to make a payment on or before June 25, 2013, but the Agreement states that no payment was due until the FAA issued the requisite certification).

As a result, Plaintiff initiated the instant action. Plaintiff's Amended Complaint asserts six[3] claims for relief:

- Breach of contract;
- Specific performance;
- Breach of the covenant of good faith and fair dealing;
- Constructive trust/equitable lien with respect to the Assets involved in the Agreement;
- Replevin; and
- Declaratory judgment that Plaintiff is entitled to ownership of and title to the Assets involved in the Agreement.

(*Id.* at 10–17.)

On July 26, 2016, Plaintiff filed its first Motion for Default Judgment (Doc. # 22), and the Clerk of Court docketed an Entry of Default as to Defendant for failure to answer or otherwise respond on a timely basis (Doc. # 23), which was vacated based on Defendant's Motion to Vacate Clerks Entry of Default (Doc. ## 32, 40). Accordingly, Defendant filed an Answer on December 7, 2016. (Doc. # 41.) Thereafter, the parties both filed Motions for Summary Judgment, which this Court denied.[4] (Doc. ## 48, 65, 69, 77.)

---

[3] Plaintiff's Amended Complaint contains seven claims for relief, but the sixth claim appears to be a duplication of the fourth claim.

[4] In the Court's Order Denying Plaintiff's Motion for Partial Summary Judgment (Doc. # 65), the Court noted that it is unclear whether "Bear Aerospace actually had valid ownership rights to the Mewa Assets at the time of [the] alleged transfer" to Plaintiff. Additionally, in the Court's Order Denying Defendant's Motion for Summary Judgment (Doc. # 77), the Court noted that it is unclear "[w]hether the 2005 transfer of shares of Bear Aerospace Poland Sp. Z o.o. (which later changed its name to Gapex) from Bear Aerospace Inc. to Genapol Sp. Z.o.o. . . . were valid transfers that included the Mewa Assets." The Court further observed that there "are substantial disagreements about the multiple title transfers that allegedly occurred between 2002 and 2016 and competing bills of sale and supporting transfer documents." (*Id.* at 3.)

On October 31, 2018, the Clerk of Court entered a Notice which indicated that Defendant's counsel, Youras Ziankovich, was no longer eligible to practice law before this Court because the Colorado Supreme Court suspended him from the practice of law in Colorado. (Doc. # 88.) Accordingly, Magistrate Judge Mix advised Defendant that, because it is a corporate entity, it "may not appear without counsel admitted to the bar of this court . . . ." (Doc. # 89) (citation omitted). The magistrate judge ordered that Defendant was required to have new counsel enter an appearance on its behalf by November 30, 2018. (*Id.*) Further, the magistrate judge warned Defendant that "absent prompt appearance of substitute counsel, pleadings and papers may be stricken, and default judgment or other sanctions may be imposed against the entity." (*Id.*) (citation omitted). Nevertheless, Defendant failed to have new counsel enter an appearance, and it has not submitted any filings to date.

Therefore, the Clerk of the Court properly docketed an Entry of Default (Doc. # 92) on December 20, 2018, pursuant to Plaintiff's Motion for Entry of Default (Doc. # 91). Subsequently, Plaintiff filed the instant Motion and Memorandum for Entry of Default Judgment (Doc. # 94) on January 18, 2019. Plaintiff's counsel certified that he provided Defendant with notice of the instant Motion by emailing a copy of the Motion to Defendant at three different email addresses. (Doc. # 94 at 18.) Plaintiff's counsel further indicated that he served Defendant's former counsel using the ECF system. (*Id.*)

## II.     STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure, the court shall enter a default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). Default judgment may be entered by the clerk of court if the claim is for "a sum certain," Fed. R. Civ. P. 55(b)(1), in all other cases, as here, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[D]efault judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

A default amounts to an admission of liability, and all well-pleaded allegations in the complaint pertaining to liability are deemed true. See *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992) (internal citation omitted); *Lyons P'ship, L.P. v. D&L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 109 (E.D.N.Y. 2010). It "remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Leider v. Ralfe*, No. 01 Civ. 3137 (HB) (FM), 2004 WL 1773330, at *7 (S.D.N.Y. July 30, 2004) (quoting *In re Indus. Diamonds Antitrust Litig.*, 119 F. Supp. 2d 418, 420 (S.D.N.Y. 2000)).

Additionally, courts are required to make an independent determination of the amount of damages to be awarded, unless the amount of damages is certain. *Ullico Cas. Co. v. Abba Shipping Lines, Inc.*, 891 F. Supp. 2d 4, 7 (D.D.C. 2012) (citing *Int'l Painters & Allied Trades Indus. Pension Fund v. Davanc Contracting, Inc.*, 808 F. Supp. 2d 89, 94 (D.D.C. 2011)). "In instances where the amount of damages is not certain, the court may hold a hearing, but is not required to do so as long as there is a basis for determining damages for purposes of the default judgment." *Id*. (citing *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 160 (D.D.C. 2009)).

For instance, courts need not conduct a hearing "if the amount claimed is a liquidated sum or one capable of mathematical calculation." *Eighth Dist. Elec. Pension Fund v. Campbell Elec., Inc.*, No. 16-cv-03040-CMA, 2017 WL 1243059, at *2 (D. Colo. Mar. 17, 2017) (quoting *Hunt v. Inter–Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985)). In making an independent determination of the amount of damages, "the court may rely on detailed affidavits or documentary evidence." *Id*. (quoting *Breaking the Chain Found., Inc. v. Capitol Educ. Supp., Inc.*, 589 F. Supp. 2d 25, 28 (D.D.C. 2008)); *Lopez v. Highmark Constr., LLP*, No. 17-cv-01068-CMA-MLC, 2018 WL 1535506, at *3 (D. Colo. Mar. 29, 2018) (same).

In addition to, or in lieu of, damages and costs, courts are empowered to grant declaratory relief following default. *Continental Ins. Co. v. Huff Enters. Inc.*, No. 07-cv-3821 (NGG), 2009 WL 3756630, at *3 (E.D.N.Y. Nov. 6, 2009). Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, the Court may enter a judgment declaring "the rights and other legal relations of any interested party seeking such declaration . . . ." 28

7

U.S.C. § 2201. Declaratory relief is appropriate "(i) where the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, or (ii) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings." *Philadelphia Indem. Ins. Co. v. Asperi*, No. 18-cv-02372-CMA-NRN, 2019 WL 588193, at *2 (D. Colo. Feb. 13, 2019) (quoting *Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, 196 F. Supp. 2d 378, 384 (S.D.N.Y. 2002) (quoting *Md. Cas. Co. v. Rosen*, 445 F.2d 1012, 1014 (2d Cir. 1971))).

In the context of a default judgment, a plaintiff "must . . . establish that on the law it is entitled to the relief it requests, given the facts as established by the default." *PHL Variable Ins. Co. v. Bimbo*, No. 17-CV-1290 (FB) (ST), 2018 WL 4691222, at *2 (E.D.N.Y. Aug. 30, 2018), *report and recommendation adopted*, No. 17-CV-1290 (FB) (ST), 2018 WL 4689580 (E.D.N.Y. Sept. 28, 2018) (quoting *Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Generation II Plumbing & Heating, Inc.*, No. 07CV5150 (SJ) (SMG), 2009 WL 3188303, at *2 (E.D.N.Y. Oct. 1, 2009)).

### III. ANALYSIS

**A. THIS COURT HAS JURISDICTION**

This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1332. The parties are completely diverse and the amount in controversy exceeds the $75,000 statutory threshold. (Doc. # 11-1 at 1.) Further, this Court has personal jurisdiction over Defendant based on Defendant's contacts with the forum. (*Id*. at 2–3.) Therefore, adjudication of this matter is appropriate.

## B.   DEFENDANT HAS DEFAULTED

It is manifest from the record that Defendant has defaulted. A party fails to "otherwise defend" for purposes of Rule 55 where, as here, a party effectively signals its intention to cease participating in its own defense, even after filing an answer. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129–31 (2d Cir. 2011). After its attorney was suspended from practicing law in Colorado, Magistrate Judge Mix provided Defendant with an adequate amount of time for new counsel to enter an appearance, and the magistrate judge gave Defendant a fair warning of the consequences of failing to do so. However, Defendant did not avail itself of the opportunity to find new counsel despite receiving notice of Plaintiff's Motion for Default Judgment. *See supra* Section I. Therefore, it is evident that Defendant has ceased participating in its own defense.

## C.   BREACH OF CONTRACT CLAIM

To recover on a breach of contract claim, a plaintiff must prove (1) the existence of a contract; (2) that the plaintiff performed its duties under the contract (or was justified in failing to do so); (3) that the defendant failed to perform the contract; and (4) resulting damages. *Long v. Cordain*, 2014 COA 177, ¶ 19 (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)).

The well-pleaded facts in Plaintiff's Amended Complaint are sufficient to establish a claim for breach of contract. Plaintiff entered into the Mewa Agreement with Defendant, according to which Defendant promised to sell its claims to the Mewa Assets to Plaintiff in exchange for $270,000. Additionally, Plaintiff attempted to perform

its duties under the Agreement, but Defendant's conduct inhibited Plaintiff's ability to fulfil its obligations. Specifically, Defendant failed to supply the information that Plaintiff needed to obtain EASA and FAA certification for the aircraft.

Moreover, Defendant failed to perform its duties under the Agreement because it did not transfer the Assets to Plaintiff. Finally, Plaintiff sustained damages as a result of Defendant's conduct because it expended resources in reliance on Defendant's promise to perform, and Plaintiff did not receive the benefit of its bargain. Therefore, the Court must perform an independent assessment of the amount of damages to be awarded. *Ullico*, 891 F. Supp. 2d at 7.

In Colorado, "the measure of damages for a breach of contract is the loss in value to the injured party of the other party's performance caused by its failure or deficiency, plus any other incidental or consequential loss caused by the breach, less any cost or other loss that the injured party has avoided by not having to perform." *Energy Acuity, LLC v. Beneficial Energy, LLC*, No. 16-cv-00906-RM-MJW, 2017 WL 3530284, at *1 (D. Colo. Aug. 17, 2017) (quoting *Gen. Ins. Co. of Am. v. City of Colorado Springs*, 638 P.2d 752, 759 (Colo. 1981)). Thus, the nonbreaching party "may recover damages for [a] loss that 'may fairly and reasonably be considered . . . arising naturally, i.e., according to the usual course of things, from [the] breach of contract itself.'" *Core-Mark Midcontinent Inc. v. Sonitrol Corp.*, 2016 COA 22, ¶ 32 (quoting *Hadley v. Baxendale*, (1854) 156 Eng. Rep. 145, 9 Exch. 354).

Additionally, the nonbreaching party "may also recover damages for [a] loss that was 'such as may reasonably be supposed to have been in the contemplation of both

parties, at the time they made the contract, as the probable result of the breach of it.'" *Id*. (quoting *Hadley*, 156 Eng. Rep. at 151, 9 Exch. at 354). Actual foresight is not required; "the losses need only be reasonably foreseeable as a probable consequence of the breach by an ordinary person of common experience." *Id*. (citing *Corbin on Contracts* § 56.6, at 104; *Farnsworth on Contracts* § 12.14, at 259–60; *Denny Constr., Inc. v. City & Cty. of Denver*, 199 P.3d 742, 751 (Colo. 2009)).

In the instant case, Plaintiff—through the affidavit of Plaintiff's President, William Cashon—claims that it lost $31,335.00 that it had paid towards EASA certification due to Defendant's conduct. (Doc. # 96 at 9.) Additionally, Plaintiff asserts that it expended "[c]osts for executing business in Poland and China" in the amount of $19,241.88, which it "lost due to [Defendant's] wrongful and improper actions." (*Id*.) In support of its calculations, Plaintiff submitted evidence[5] of "a wire transfer covering **part** of the [EASA] certifications costs" and "a bill for services rendered for a transaction agent." (*Id*.) (emphasis added).

With regard to the wire transfers, Plaintiff submitted a bank statement that indicates that Plaintiff made two transfers in November 2014, which total $26,797.81. (Doc. # 96-1.) The document Plaintiff submitted as evidence of "a bill for services rendered for a transaction agent" reflects various transactions in Germany and Poland in the months of February and October 2014. (Doc. # 96-2.) Although not readily

---

[5] On February 12, 2019, this Court ordered Plaintiff to submit further evidence to support the damages it claims in the instant Motion. (Doc. # 95.) Plaintiff did so on March 15, 2019. (Doc. # 96.) Plaintiff's counsel indicated that the evidence it presented "constitute[s] the best evidence that Plaintiff can practically gather in support of its position." (Doc. 96-3 at 2.)

11

discernable from either Mr. Cashon's affidavit or the nature of the transactions, a liberal interpretation of Mr. Cashon's affidavit suggests that the "services rendered for a transaction agent" are connected to Plaintiff's efforts to secure the requisite certification from the EASA. Those transactions total $1,261.29. *See* (*id.*). When the transaction agent expenses are added to the November 2014 wire transfers, Plaintiff has demonstrated that it spent a total of $28,059.40 in connection with the EASA certification process. Although Mr. Cashon estimates that Plaintiff spent $31,335.00 with respect to that process, Mr. Cashon provides no support for how he arrived at that figure, and the Court will not award a sum that is based on speculation.

Similarly, neither Plaintiff nor Mr. Cashon provide any support for Mr. Cashon's calculation of Plaintiff's "[c]osts for executing business in Poland and China lost due to [Defendant's] wrongful and improper actions," which allegedly total $19,241.88. (Doc. # 96 at 9.) The Court is left to guess as to what business ventures Mr. Cashon is referencing, how those ventures are related to Defendant's conduct, and how Mr. Cashon calculated that Plaintiff lost $19,241.88. Plaintiff provides no documentary support with respect to its claimed damage, and Mr. Cashon's estimate "[b]ased on [his] knowledge and experience in the industry gained over 35" is simply insufficient for this Court to award the relief sought.

In sum, the only damages that Plaintiff has established with respect to its breach of contract claim are those that it sustained with respect to the expenses it incurred during the EASA certification process. Based on the evidence Plaintiff presented, that amount totals $28,059.40.

## D. PLAINTIFF'S REMAINING CLAIMS

In the instant Motion, Plaintiff indicates that its Amended Complaint asserted the following claims in addition to breach of contract: replevin, constructive trust/equitable lien, and declaratory judgment. (Doc. # 94 at 9.) Therefore, the Court assumes that Plaintiff is no longer pursuing the other claims for relief it raised in its Amended Complaint, namely, specific performance and bad faith breach of contract. (Doc. # 11-1 at 11, 13.) Accordingly, the Court will limit its analysis to the claims that Plaintiff referenced in the instant Motion.

Plaintiff's claims for replevin, constructive trust/equitable lien, and declaratory judgment all depend on Plaintiff's allegation that Defendant is wrongfully asserting ownership of the Assets and that Plaintiff is the rightful owner of the Assets. (*Id*. at 14–17.) However, even considering the well-pleaded facts in Plaintiff's Amended Complaint to be true, Plaintiff has not established that it is the true owner of the Assets and that Defendant is wrongfully in possession of them. *See supra* n.2. Plaintiff's claim of ownership is premised upon an agreement into which Plaintiff entered with Bear Aerospace, Inc. (Doc. # 11-1 at 32.) In that transaction, Bear Aerospace indicated that it "**may** have certain rights" to the Assets and that it transferred those rights "**if any**" to Plaintiff. (*Id*.) (emphasis added).

However, it is not clear from Plaintiff's Amended Complaint that Bear Aerospace had any rights to sell. Plaintiff alleges that Bear Aerospace "attempted to sell" the Assets to Genapol, Sp. Z o.o., but "this sale was never finalized, as no money was ever exchanged." (*Id*. at 4.) Plaintiff further alleges that Genapol assigned the Assets to

Defendant "under terms that were also not completed." (*Id.*) However, Plaintiff's allegations are vague and conclusory and, therefore, not deemed to be true for purposes of default judgment. *Jones v. Wells Fargo Bank, N.A.*, No. 13-cv-02210-MSK-KLM, 2014 WL 3906297, at *8 (D. Colo. Aug. 7, 2014); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017) (distinguishing "well-pleaded facts" from "conclusory allegations"). Therefore, Plaintiff is not entitled to default judgment with respect to its claims for replevin, constructive trust/equitable lien, and declaratory judgment.

## IV. CONCLUSION

Based on the foregoing reasons, the Court ORDERS that Plaintiff's Motion and Memorandum for Entry of Default Judgment Against Gapex Aviation Sp. Z o.o. is GRANTED IN PART AND DENIED IN PART. The Motion is Granted with respect to Plaintiff's breach of contract claim, and Plaintiff is entitled to $28,059.40 in damages. The Motion is denied with respect to all other claims.

The Clerk of Court respectfully is directed to enter final judgment in favor of Plaintiff Amair, Inc. and against Defendant Gapex Aviation Sp. Z o.o. in the amount of $28,059.40.

DATED: April 17, 2019

BY THE COURT:

*[signature]*

CHRISTINE M. ARGUELLO
United States District Judge